J-S10005-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                       : PENNSYLVANIA
                                       :
                v.                     :
                                       :
                                       :
                                       :
LAMONT ZAMICHIELI                      :
                                       :
                Appellant              : No. 1420 MDA 2024

Appeal from the PCRA Order Entered September 20, 2024
In the Court of Common Pleas of Huntingdon County Criminal Division at
No(s):  CP-31-CR-0000418-2017

BEFORE:  BOWES, J., OLSON, J., and SULLIVAN, J.

MEMORANDUM BY BOWES, J.:                        **FILED: APRIL 29, 2025**

Lamont Zamichieli appeals *pro se* from the order dismissing his first petition filed pursuant to the Post Conviction Relief Act ("PCRA").  Finally reaching the merits of Appellant's issues in the third appeal from the same PCRA petition, we affirm.

This Court previously set forth the pertinent background of this case:

> [I]n April of 2017, while Appellant was incarcerated at the State Correctional Institution ("SCI") at Huntingdon on unrelated charges, he mailed letters to two individuals outside of the institution.  One of the letters was delivered to its intended victim; the other was marked undeliverable and returned to the SCI.  The letters were sexually explicit, and DNA testing confirmed that both letters were stained with Appellant's seminal fluid.  In the letters, Appellant directed the recipients to lick hand-drawn hearts on the paper; testing revealed that these hearts were smeared with semen.

*Commonwealth v. Zamichieli*, ("*Zamichieli I*"), 225 A.3d 1177, 2019 WL 7000025, at *1 (Pa.Super. 2019) (non-precedential decision) (cleaned up).

Based upon this conduct, Appellant was criminally charged with one count of aggravated harassment by prisoner, indecent assault, and harassment, as to each letter. He proceeded to a jury trial on March 18, 2019, with the assistance of trial counsel Christopher B. Wencker, Esquire. During jury selection, Attorney Wencker orally moved to dismiss Appellant's case pursuant to Pa.R.Crim.P. 600. Appellant subsequently filed a *pro se* Rule 600 motion, which counsel adopted on the record, and the court denied.

Just before the jury entered the room for the one-day trial, Appellant became argumentative with the trial court and was warned that continued disruptions would result in his removal from the courtroom. Appellant responded by pounding his head so hard onto counsel's table that he rendered himself unconscious. Consequently, Appellant was removed from the courtroom and tried *in absentia*. The jury found him guilty of two counts of aggravated harassment by prisoner, one count of indecent assault, and one count of harassment. Given Appellant's continued threats of violence, namely, to disarm a sheriff and shoot either himself or someone else the next time he was in a courtroom, the court sentenced him by videoconference to an aggregate term of incarceration of four and one-half to fourteen years.

Attorney Wencker timely filed a notice of appeal on Appellant's behalf. In this Court, he challenged the sufficiency of the evidence for Appellant's aggravated harassment by prisoner convictions, his exclusion from trial, and his remote attendance at sentencing. Upon review, we affirmed Appellant's judgment of sentence. *Id*.

The instant PCRA proceedings commenced thereafter, beginning thusly:

> On June 25, 2020, [Appellant] filed the instant, timely *pro se* PCRA petition, alleging, *inter alia*, ineffective assistance of counsel. The following day, the PCRA court issued Pa.R.Crim.P. 907 notice of its intent to dismiss [the] PCRA petition. The PCRA court stated, in part, that the petition was untimely filed. [Appellant] filed a *pro se* response, challenging the PCRA court's finding that his petition was untimely filed. On August 28, 2020, the PCRA court issued an order acknowledging that it had improperly determined that [his] PCRA petition was untimely filed, and rescinding its prior notice. The PCRA court issued Rule 907 notice of its intent to dismiss [Appellant]'s PCRA petition on the basis that it lacked merit. [Appellant] filed a *pro se* response.

*Commonwealth v. Zamichieli* ("*Zamichieli II*"), 268 A.3d 414, 2021 WL 5194087, at *1 (Pa.Super. 2021) (non-precedential decision) (citations and some capitalization altered).

The PCRA court denied the petition and Appellant appealed to this Court. Since we determined that he had been deprived of his statutory right to counsel in litigating his first PCRA petition, we vacated the order dismissing his petition and remanded with instructions to appoint counsel or conduct a hearing pursuant to *Commonwealth v. Grazier*, 713 A.2d 81 (Pa. 1988), if Appellant nonetheless wished to proceed *pro se*. Appellant sought to represent himself on remand. After conducting a *Grazier* hearing, the PCRA court granted his request to proceed *pro se*.

Once again, the PCRA court dismissed Appellant's PCRA petition, he appealed *pro se*, and we remanded the matter back to the PCRA court. This time, we elucidated as follows:

- 3 -

Appellant pled in his petition, and alleged on appeal, that he requested direct appeal counsel file a petition for allowance of appeal with our Supreme Court, but counsel unjustifiably failed to do so. If Appellant can prove that he timely requested counsel to file a petition for allowance of appeal, and that counsel unjustifiably disregarded that request, he would be entitled to the reinstatement of his right to file a petition for allowance of appeal *nunc pro tunc.*

However, absent the PCRA court's findings on this matter, we find it necessary to vacate the PCRA court's order and remand for further proceedings consistent with this decision, including an evidentiary hearing as provided for by Pa.R.Crim.P. 907.

***Commonwealth v. Zamichieli*** ("***Zamichieli III***"), 292 A.3d 1078, 2023 WL 118838, at *6 (Pa.Super. 2023) (footnotes and citation omitted).

The record was returned to the PCRA court in August 2023. Appellant continued to proceed *pro se* but the court also appointed standby counsel. Due to logistical issues, the evidentiary hearing ordered upon remand was not held until March 15, 2024. Critically, Appellant abandoned the issue upon which this Court had remanded, namely, his request to file a petition for allowance of appeal to our Supreme Court during his direct appeal. Instead, he focused on his other ineffectiveness claims pertaining to Rule 600, incompetency, insanity, and sufficiency of the evidence.[1]

---

[1] We appended the following footnote to our remand directive:

We note that a PCRA court may dismiss a petition without an evidentiary hearing "[i]f the judge is satisfied from this review that there are no genuine issues concerning any material fact and that the defendant is not entitled to post-conviction collateral relief[.]" Pa.R.Crim.P. 907(1). Here, we agree with Appellant that his PCRA petition presented a genuine issue of material fact, and he may be entitled to PCRA relief, *i.e.*, the reinstatement of his right to file

*(Footnote Continued Next Page)*

At the hearing, Appellant called Attorney Wencker as a witness regarding his Rule 600 claim. Without addressing his other ineffectiveness claims, he offered him to the Commonwealth for cross-examination. On redirect, Appellant attempted to question him regarding the other issues, but the PCRA court sustained the Commonwealth's objection to Appellant's attempt to reopen his testimony. *See* N.T. PCRA Hearing, 3/15/24, at 14, 26-27. Appellant then testified in summary fashion.

The PCRA court took the matter under advisement. As it pertains to Appellant's Rule 600 claim, the court ordered transcription for fifteen missing notes of testimony to confirm the reason for various continuances. Due to a change in the court-reporting software, the court only received four transcripts. Thereafter, it entertained briefs from the parties and, ultimately, denied Appellant's petition.

This timely appeal followed. Appellant simultaneously submitted an unsolicited concise statement pursuant to Pa.R.A.P. 1925(b). In lieu of a Rule 1925(a) opinion, the PCRA court referred us to the opinion provided with its most recent order denying Appellant's petition. In this Court, Appellant raises the following five issues, along with their concomitant sub-questions:

---

a petition for allowance of appeal. Accordingly, an evidentiary hearing is warranted on this issue on remand.

*Zamichieli II*, 2023 WL 118838, at *6 n.6. Since it is unclear whether remand was limited solely to a hearing on that issue, we will not fault the PCRA court for permitting Appellant to expand the scope of the hearing to encompass his other PCRA claims upon which we declined to rule in *Zamichieli II*.

(A)(i) PCRA/trial court abused its discretion by denying motion to dismiss pursuant to Pa.Crim.P. Rule 600 although Commonwealth violated Rule 600 and [the] 6th Amendment by causing over 365 days of non-excludable/non-excusable delay and continuances by its lack of speedy trial, lack of due diligence on checking on status of, obtaining and producing to defense, mandatory discovery (Serology and DNA Lab reports and DNA Data) under Rule 573 from [Pennsylvania State Police ("PSP")] Crime Lab Analyst; Representatives of Commonwealth and even the defense continuances requested for purpose of obtaining mandatory discovery should be attributed to Commonwealth for failure to timely produce discovery?

(A)(ii) Trial counsel [was] ineffective for requesting continuances of March 5, 2018 and May 7, 2018 dates; had he not, trial could have commenced without Commonwealth's Lab reports/evidence and obtained not guilty verdict due to Commonwealth not meeting elements of the charges or even forced Commonwealth to request continuances due to not being trial ready without DNA Lab results, violating Rule 600???

(A)(iii) Trial counsel [was] ineffective for failing to raise Rule 600 written before trial and on direct appeal???

(B)(i) PCRA/trial court erred finding [Appellant] mentally competent to stand trial although it had not ever conducted a competency evaluation of [Appellant]'s mental health by a certified mental health specialist throughout the pendency of case before removing him from the trial court room and trying him in absence after he was actively having auditory and visual hallucinations in open court at trial and then ramming his own forehead very hard against counsel's table in a suicide attempt knocking himself unconscious as he was not aware what was going on, did not know nature of charges or proceedings and not know right from wrong and not able to assist counsel???

(B)(ii) Trial Counsel Wencker [was] ineffective for failure to raise insanity defense and incompetency to stand trial before trial, at trial or on direct appeal???

(C)(i) PCRA/trial court erred by failing to grant relief on claim: Evidence insufficient to convict on attempted aggravated

harassment by prisoner charge as to count 1 as there was no existing complaining victim or "another" person by the name of "Virginia Fass" to support subpart of element of statute as there was no attendance [*sic*] or testimony at preliminary hearing or trial of a "Virginia Fass". Commonwealth's witnesses; PSP and [Department of Corrections ("DOC")] officials even testified at trial that the existence, whereabouts and identity of a "Fass" is unknown as the letter evidence was returned as undeliverable as addressed back to the prison. There is no victim, there is no case, so conviction and sentence should be vacated???

> (C)(ii) Trial counsel Wencker [was] ineffective for failure to raise this specific argument before or at trial or on direct appeal???

(D)(i) PCRA/trial court erred in not granting relief on issue: DNA evidence was not admissible and denied [Appellant] a fair trial. DNA sample was not [Appellant's] DNA as the known sample referred to in the DNA analysis lab report had no chain of custody and no testimony as to chain of custody from PSP [Troopers] Hahn or Miller, PSP crime lab serologist or DNA analyst, DA Smith or DOC officials. DNA expert generated DNA lab report but admitted that she or anybody who testified at trial did not ever collect or prepare a DNA buccal known sample swab directly from [Appellant]. The accused identity was at issue and without it Commonwealth could not prove that [Appellant] allegedly committed the crime without DNA evidence linking him to the crime or scene. Appellant is entitled discharge or a new trial???

> (D)(ii) Trial counsel Wencker [was] ineffective for failure to raise the preserve DNA evidence claims on direct appeal???

(E)(i) PCRA/trial court erred by failing to address and failing to grant relief on issue: Statute "aggravated harassment by prisoner" is unconstitutional and void for vagueness as evidence insufficient on elements of both counts, since [Appellant] was accused and found guilty of allegedly "mailing" letters to alleged victims and not throwing, tossing, spitting or expelling bodily fluids directly upon another person while in prison as the element of the word "harassment" within the title of the statute requires a repeated course of conduct against each alleged victim rather than just a single occurrence. [Appellant] can not [*sic*] lawfully be convicted on the charges, so his sentence and conviction should be vacated???

>> (E)(ii) Trial counsel Wencker [was] ineffective for failure to raise the arguments before trial, at trial or on direct appeal???

Appellant's brief at 2-4 (some capitalization and indenting altered).

We begin with the pertinent legal principles governing our review of Appellant's PCRA claims, which all challenge in some fashion the propriety to Attorney Wencker's representation:

> On appeal from the denial . . . of relief under the PCRA, our review is limited to determining whether the PCRA court's ruling is supported by the record and free of legal error. The PCRA court's factual findings are binding if the record supports them, and we review the court's legal conclusions *de novo*.
>
> . . . .
>
> Counsel is presumed to be effective and the burden of demonstrating ineffectiveness rests on the petitioner. To obtain relief based on a claim of ineffectiveness, a petitioner must establish: (1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result. A failure to meet any of these prongs bars a petitioner from obtaining relief.

*Commonwealth v. Rosario*, 314 A.3d 888, 892-93 (Pa.Super. 2024) (cleaned up). Finally, "this Court may affirm a PCRA court's order on any legal basis." *Commonwealth v. Howard*, 285 A.3d 652, 657 (Pa.Super. 2022) (cleaned up).

Appellant first claims that his rights guaranteed by Rule 600 were violated and Attorney Wencker rendered ineffective assistance by failing to

preserve this issue before the trial court and raise it on direct appeal.[2] **See**

Appellant's brief at 13.

We consider Appellant's complaint mindful of the following:

Generally, Rule 600 requires that a defendant be brought to trial within 365 days of the filing of the criminal complaint. Pa.R.Crim.P. 600(A)(2)(a). However, a defendant is not automatically entitled to discharge under Rule 600 where trial starts more than 365 days after the filing of the complaint. Rather, Rule 600 provides for dismissal of charges only in cases in which the defendant has not been brought to trial within the term of the adjusted run date, after subtracting all excludable and excusable time. The adjusted run date is calculated by adding to the mechanical run date, *i.e.*, the date 365 days from the complaint, both excludable time and excusable delay. Excludable time is classified as periods of delay caused by the defendant. Pa.R.Crim.P. 600(C)(2). Excusable delay occurs where the delay is caused by circumstances beyond the Commonwealth's control and despite its due diligence. Due diligence is a fact-specific concept that must be determined on a case-by-case basis. Due diligence does not require perfect vigilance and punctilious care, but rather a showing by the Commonwealth that a reasonable effort has been put forth. Due diligence includes, *inter alia*, listing a case for trial prior to the run date, preparedness for trial within the run date, and keeping adequate records to ensure compliance with Rule 600. Periods of delay caused by the Commonwealth's failure to exercise due diligence must be included in the

---

[2] In the broad statement setting forth this issue, Appellant also alleges that his constitutional right to a prompt trial was violated. However, since he presents no argument in support of a constitutional claim in his brief, we will not address this avenue of speedy trial relief. **See Commonwealth v. Tchirkow**, 160 A.3d 798, 804 (Pa.Super. 2017) ("Although this Court is willing to construe liberally materials filed by a *pro se* litigant, a *pro se* appellant enjoys no special benefit. . . . This Court will not act as counsel and will not develop arguments on behalf of an appellant." (cleaned up)); **see also Commonwealth v. Colon**, 87 A.3d 352, 357 n.2 (Pa.Super. 2014) ("Where the appellant does not raise the separate constitutional issue apart from the Rule 600 issue as a basis for the motion to dismiss, there is no need for the [constitutional] balancing test to be examined." (citation omitted)).

computation of time within which trial must commence.
Pa.R.Crim.P. 600(C)(1).

***Commonwealth v. Martz***, 232 A.3d 801, 810-11 (Pa.Super. 2020) (some citations and quotation marks omitted).

As detailed hereinabove, the record reflects that in March 2018, trial counsel orally raised a Rule 600 motion and orally adopted Appellant's *pro se* motion to dismiss. After reviewing the docket, the trial court determined that "Rule 600 does not apply" and denied the request to dismiss Appellant's case. ***See*** N.T. Trial 3/18/19, at 4-5. Since counsel in fact raised a Rule 600 motion in the trial court, Appellant's ineffectiveness claim premised upon counsel's failure to do so fails *ab initio*.

That does not end our inquiry, however, as Appellant also assails counsel's decision not to pursue Rule 600 as part of his direct appeal. At the PCRA hearing, Attorney Wencker testified that he did not remember why he chose not to raise Rule 600 in this Court, but explained that his general appellate philosophy was to focus on sufficiency challenges over procedural issues if the sufficiency claims have a chance at success. ***See*** N.T. PCRA Hearing, 3/15/24, at 13-14. Additionally, he noted that he would not have raised Rule 600 if he did not believe it had some merit. ***Id***. at 13.

Based upon this testimony, it stands to reason that Attorney Wencker determined the claims he raised had a stronger likelihood of garnering relief from this Court. In light of this explanation, we conclude that Appellant has not established that counsel lacked a reasonable strategic basis for not raising

Rule 600 on appeal. Thus, we agree with the PCRA court that Appellant's ineffectiveness claims based upon Rule 600 fail.[3]

In his second issue, Appellant argues that he was incompetent to stand trial, and that counsel should have challenged his competency and pursued an insanity defense both in the trial court and on appeal. **See** Appellant's brief at 35. He maintains that he was legally insane when he committed the offenses and incompetent at the time of trial because he was not being medicated for his schizoaffective disorder diagnosis, which manifested in hallucinations and self-harming behavior. **See** Appellant's brief at 44-45.

PCRA petitioners may present stand-alone claims as to competency, in addition to ones rooted in ineffectiveness. **See Commonwealth v. Reid**, 280 A.3d 929, 934–35 (Pa. 2022).

> [W]henever a court can conduct a meaningful hearing to evaluate retrospectively the competency of the defendant, such a hearing is permissible. In examining this possibility, a PCRA court first must determine whether the defendant's PCRA petition raises a material issue of fact concerning whether he was competent at the time of trial such that he would be entitled to a hearing on the claim.
>
> Next, the PCRA court must decide whether there exists sufficient evidence of the defendant's mental status at the time of trial such that a hearing would be adequate to address the issue of

_____

[3] We note that the PCRA court rejected Appellant's Rule 600 argument based upon a lack of merit, which it extensively reviewed in its opinion and appending table. **See** PCRA Court Opinion, 9/20/24, at 13-16, Exhibit A. While we resolve Appellant's ineffectiveness claim fails for a different reason, we may affirm on any grounds supported by the record. **See Howard**, 285 A.3d at 657.

- 11 -

competency, or whether the evidence is so lacking that a new trial must be awarded.

*Id*. at 935 (cleaned up). Further:

A defendant is presumed competent and it is her burden to show otherwise, the determination of which is within the sound discretion of the trial court. When a competency hearing takes place, incompetency may be established by a preponderance of the evidence. The sensitive nature of competency determinations requires the appellate courts to afford great deference to the conclusions of the trial court, which has had the opportunity to observe the defendant personally. When the record supports the trial court's determination, we will not disturb it.

. . . .

Section 7402(a) of the Mental Health Procedures Act provides:

**(a) Definition of Incompetency.**--Whenever a person who has been charged with a crime is found to be substantially unable to understand the nature or object of the proceedings against him or to participate and assist in his defense, he shall be deemed incompetent to be tried, convicted or sentenced so long as such incapacity continues.

50 P.S. § 7402(a). A competency inquiry is driven by Fourteenth Amendment due process concerns regarding a defendant's ability to understand criminal charges and proceedings, and to consult counsel, so as to ensure the ability to manage a meaningful defense.

To prove incompetence, a defendant must establish he is either unable to understand the nature of the proceedings against him or unable to participate in his own defense. More specifically, the relevant question in a competency determination is whether the defendant has sufficient ability at the pertinent time to consult with counsel with a reasonable degree of rational understanding, and to have a rational as well as a factual understanding of the proceedings.

- 12 -

*Commonwealth v. Bainey*, ___ A.3d ___, 2025 WL 495942, at *4–5 (Pa.Super. 2025) (footnote and some citations and quotations marks omitted).

In contrast, our legislature has codified the parameters of an insanity defense in this way:

> **(a) General rule.--**The mental soundness of an actor engaged in conduct charged to constitute an offense shall only be a defense to the charged offense when the actor proves by a preponderance of evidence that the actor was legally insane at the time of the commission of the offense.
>
> **(b) Definition.--**For purposes of this section, the phrase **"legally insane"** means that, at the time of the commission of the offense, the actor was laboring under such a defect of reason, from disease of the mind, as not to know the nature and quality of the act he was doing or, if the actor did know the quality of the act, that he did not know that what he was doing was wrong.

18 Pa.C.S. § 315. We have further explained this defense in the following manner:

> To plead the defense of insanity suggests that the defendant committed the act, but was not legally culpable. An insanity defense focuses upon a defendant's capacity, at the time of the offense, to understand the nature and quality of her actions or whether she knew that her actions were wrong. It has long been accepted that criminal defendants may be presumed sane for purposes of determining their criminal liability. Thus, under the clear language of [§] 315(a), the burden of proving insanity by a preponderance of the evidence is upon the defendant. Moreover, we have long stated that the Commonwealth can [defeat the defense] not only by psychiatric testimony but also by lay testimony which shows that he or she knew the nature and quality of the act committed and knew that what had been done was wrong. Furthermore, it is within the factfinder's right to disbelieve an insanity defense and credit the testimony of the eyewitnesses.

- 13 -

*Commonwealth v. Watson*, 292 A.3d 562, 567 (Pa.Super. 2023) (cleaned up).

Here, the PCRA court declined to hold a competency hearing as part of the PCRA proceedings because it found no merit to the underlying claims of incompetency or insanity. Specifically, the court explained that it

> was well aware of the issues caused by [Appellant]'s behavior over the course of trial, even well before the incident that occurred just prior to trial and which led to his being tried *in absentia*. At no point did [his] behavior exhibit a degree of mental health issues that prevented him from understanding the nature of the proceedings or participating meaningfully in his own defense. Rather, [Appellant]'s behavior exhibited a series of intentional actions to avoid meaningful participation in his trial aimed at preventing the Commonwealth and the [c]ourt from holding him to account for his actions. This was made clear by the [c]ourt during its exchange with [Appellant] that lead up to the incident just prior to trial.

PCRA Court Opinion, 9/20/24, at 17. It further stated that "[w]hile [the mental health records] show that he does have a history of psychiatric issues that are related to his behavior outburst, both before the [c]ourt and as an inmate. . ., none of them rise[s] to a level that would render him incompetent, or would establish a viable defense of insanity." *Id*. at 21.

Our review of the certified record confirms the PCRA court's findings regarding the underlying merit to Appellant's ineffectiveness and stand-alone incompetency claims, and we discern no error in its decision not to conduct a competency hearing. Stated simply, Appellant has not established that he was legally insane at the time of the underlying offenses or unable to understand the trial proceedings. It is well-settled that counsel cannot be

- 14 -

considered ineffective for not raising an insanity defense or competency challenge in the trial court or on appeal where the underlying claim lacks merit. ***See Commonwealth v. Kapellusch***, 323 A.3d 837, 847 (Pa.Super. 2024) (noting that "counsel cannot be deemed ineffective for failing to raise a meritless claim" (cleaned up)). Furthermore, we observe that Appellant did not develop the record as to Attorney Wencker's alleged ineffectiveness by asking him any relevant questions at the PCRA hearing. Thus, his claims also fail because he did not prove that counsel acted without a reasonable basis in declining to pursue these avenues in the trial court or on appeal. Therefore, we affirm the PCRA court's denial of this portion of Appellant's petition.

We address Appellant's third and fifth issues together because they both attack his convictions for aggravated harassment by prisoner. His argument is multifaceted. He generally contends that neither count can stand because the elements of the statute were not satisfied. Specifically, he posits that the statute does not prohibit the mailing of bodily fluids; there was no victim at count one since the letter was not delivered; and, because the statute concerns harassment, the Commonwealth had to prove a course of repeated conduct instead of a single incident. ***See*** Appellant's brief at 57. He further challenges his conviction at count one because the Commonwealth did not prove the existence of the individual to whom the letter was mailed, which he alleges was a supernatural alien and a figment of his hallucinations. ***Id***. at 46-48. Appellant maintains that he cannot be found to have attempted to send seminal fluid to an imaginary being. ***Id***. at 48. Finally, he argues that

counsel was ineffective for failing to raise these issues before the trial court or on appeal.

We first look at the language of the relevant statute:

A person who is confined in or committed to any local or county detention facility, jail or prison or any State penal or correctional institution or other State penal or correctional facility located in this Commonwealth commits a felony of the third degree if he, while so confined or committed or while undergoing transportation to or from such an institution or facility in or to which he was confined or committed, intentionally or knowingly causes or attempts to cause another to come into contact with blood, seminal fluid, saliva, urine or feces by throwing, tossing, spitting or expelling such fluid or material.

18 Pa.C.S. § 2703.1.

On direct appeal, Appellant, through Attorney Wencker, challenged his convictions pursuant to this statute based upon the assertion that it only applied to victims located within the prison. Our review of this argument unfolded along these lines:

We conclude that [§] 2703.1 criminalizes a confined or committed person from causing or attempting to cause "another" to come into contact with certain enumerated bodily fluids or materials. The location of the victim is not an element of the crime, and we reject Appellant's restrictive reading of the statute.

As noted, the record reflects that the letters Appellant mailed contained seminal fluid matching Appellant's DNA. Appellant mailed the letters to two women outside of the prison at a time when Appellant was confined at SCI Huntingdon, and the mailings bore Appellant's name and inmate number. Additionally, the letters requested the recipients to lick specific areas on the paper where Appellant had smeared semen. One of Appellant's letters was returned to the prison; however, Appellant's attempt to have this letter reach its intended victim satisfies the elements of the first count of aggravated harassment by prisoner. Moreover, the second letter was mailed to and received by the intended victim.

- 16 -

Thus, we conclude that the facts satisfy the elements of the second count of aggravated harassment by prisoner.

In sum, the Commonwealth established that Appellant, while incarcerated, expelled seminal fluid onto sheets of paper, mailed the papers to two victims, and the jury concluded that Appellant intended the victims to come into contact with the seminal fluid because he directed the victims to lick the stained letters. Accordingly, the elements of the crime are satisfied at each count of aggravated harassment by prisoner. We conclude that Appellant is entitled to no relief.

*Zamichieli I*, 2019 WL 7000025, at *3 (cleaned up).

Plainly, Attorney Wencker attacked the validity of Appellant's convictions for aggravated harassment by prisoner by applying the facts of his case to the language of the statute, and we found his arguments unavailing. Insofar as Appellant retreads the same territory we rejected in *Zamichieli I*, those claims have been previously litigated and cannot form the basis for PCRA relief. *See Commonwealth v. Brown*, 872 A.2d 1139, 1145 (Pa. 2005) ("Appellant cannot obtain post[-]conviction review of claims previously litigated on appeal by presenting new theories of relief to support the previously litigated claims." (citation omitted)).

For those sufficiency attacks not previously litigated, we deem the reasoning of the PCRA court apt:

The focus of the statute is not on the effect of the defendant's actions on the victim, but on the defendant's actions and intent. To hold otherwise would give rise to absurd results, such as defendants being able to escape liability simply because they were incorrect about the name of their intended victim. Here, regardless of whether [Appellant] had any personal relationship with his intended victims, knew their correct names and addresses, or even knew whether or not they actually existed, it

- 17 -

was his intent that two people receive his letters and come into contact with his seminal fluid by licking the letters. That evidence is sufficient to sustain his convictions. Because of this, any claim that Attorney Wencker might have raised at trial or on direct appeal that the evidence was insufficient because the Commonwealth did not establish that the intended victim for [count one] was an actual person would have been without merit, and he cannot be found to have been ineffective for failing to raise it.

PCRA Court Opinion, 9/20/24, at 23. Our review of the certified record bears out the court's findings, and we discern no error in its conclusions.

Lastly, Appellant assails counsel's failure to challenge the admissibility of DNA evidence. Specifically, he insists that a DNA sample was illegally taken without his knowledge and was therefore subject to suppression, and the Commonwealth did not establish a proper chain of custody. *See* Appellant's brief at 49-50.

Preliminarily, the record reveals that Attorney Wencker objected to the Commonwealth's failure to prove a chain of custody, but was overruled. *See* N.T. Trial, 3/18/19, at 161. Therefore, any ineffectiveness claim based upon counsel not lodging such an objection at trial necessarily fails. As for the decision not to challenge the custodial history on direct appeal, Appellant did not question Attorney Wencker as to his stewardship of this portion of his case at the PCRA hearing. Accordingly, he has not established that counsel lacked a reasonable basis for declining to pursue this issue on appeal.

Similarly, Appellant did not develop the record as to Attorney Wencker's strategy for declining to file a motion to suppress the DNA evidence.

Moreover, the PCRA court found that Appellant could not prove prejudice because even without the DNA match, the evidence linking Appellant to the letters and the victims was overwhelming. *See* PCRA Court Opinion, 9/20/24, at 28.

We discern no error in the court's conclusions where the certified record confirms its findings. Therefore, we hold that the PCRA court properly denied this claim.

Based on the foregoing, we affirm the order denying Appellant's PCRA petition.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 04/29/2025